THEISEN v KNAKE

Docket No. 210870. Submitted May 6,1999, at Lansing. Decided June 18, 1999, at 9:00 A.M.

Diane Theisen, as personal representative of the estate of John Theisen, deceased, brought an action in the Washtenaw Circuit Court against James E. Knake, Elizabeth Copland, Huron Valley Radiology, P.C., and St. Joseph Mercy Hospital, alleging medical malpractice and that as a result of the defendants' failure to timely render a proper diagnosis of the decedent's cancer that was indicated in x-rays taken in January 1995, the decedent was not afforded aggressive treatment that may have prolonged his life. She alleged that the defendants' delayed diagnosis was malpractice that caused a loss of certain retirement and life-long medical benefits to the decedent and his dependents because the decedent and his family would have been entitled to certain enhanced benefits if, before his death in July 1995, the decedent gave his employer five months' notice of his terminal condition. The court, Melinda Morris, J., granted a motion for summary disposition in favor of the hospital, Knake, and Copland, and a stipulation was thereafter entered dismissing Huron Valley. The plaintiff appealed.

The Court of Appeals held:

1. Any medical malpractice claim that the decedent had against the defendants survived his death and the plaintiff had the right to file any such claim. The court erred in interpreting MCL 600.2921; MSA 27A.2921 as providing that only pending claims survive death. When a person dies without having filed any claims or actions that the person may have, the decedent's personal representative may file the surviving actions.

2. Because this action is not a wrongful death action, the wrongful death statute, MCL 600.2922; MSA 27A.2922, is not applicable.

3. The plaintiff clearly alleged all the necessary elements for a medical malpractice claim. However, because this is a survival action, the only damages that may be recovered are damages that could have been recovered by the decedent had he lived and filed this suit on this own behalf. Therefore, the plaintiff is not entitled to pursue her claim with regard to the alleged loss of enhanced benefits for the decedent's dependents. There is a claim to the

extent that the plaintiff alleges that the malpractice caused the decedent to recive less benefits while he was alive and on disability and for any pain and suffering experienced by the decedent as a result of the malpractice.

4. The plaintiff failed to properly plead that the decedent would have been entitled to collect damages for loss of opportunity to prolong his life.

Affirmed in part, reversed in part, and remanded.

1. DECEDENTS' ESTATES — ACTIONS — SURVIVAL OF ACTIONS.

The survival act provides that all actions and claims survive death and do not have to be pending at the time of a person's death to survive the death; when a person who has claims or actions dies without having filed those claims or actions, the personal representative may prosecute the claims or actions in the personal representative's own name as personal representative of the decedent's estate (MCL 600.2921, 600.5852; MSA 27A.2921, 27A.5852).

2. NEGLIGENCE — ACTIONS — ELEMENTS.

The elements of an action for negligence include the existence of a duty, a breach of the standard of care, causation in fact, legal or proximate causation, and damages.

3. DECEDENTS' ESTATES — ACTIONS — DAMAGES — SURVIVAL OF ACTIONS.

A personal representative of a decedent's estate fails to state a claim for damages in a survival action under MCL 600.2921; MSA 27A.2921 where the damages sought are not damages that could have been recovered by the decedent if the decedent had lived and filed the action on the decedent's own behalf.

*Joel B. Sklar* and *Daniel Noveck*, for the plaintiff.

*O'Leary, O'Leary, Jacobs, Mattson, Perry & Mason, P.C.* (by *Kevin P. Hanbury*), for James E. Knake and Huron Valley Radiology, P.C.

*Yockey Yockey & Schliem, P.C.* (by *Kurt D. Yockey* and *Patrick A. Richards*), for St. Joseph Mercy Hospital.

*O'Connor, DeGrazia & Tamm, P.C.* (by *Julie McCann O'Connor, Richard M. O'Connor,* and *Lorraine M. Dolan*), for Elizabeth Copeland.

Before: GRIBBS, P.J., and KELLY and HOOD, JJ.

PER CURIAM. Summary disposition was granted in favor of defendants James Knake, Elizabeth Copland, and St. Joseph Mercy Hospital with regard to plaintiff's claims arising out of the alleged medical malpractice of defendants in their treatment of plaintiff's decedent. Plaintiff appeals as of right, and we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Plaintiff, as the personal representative of her deceased husband's estate, filed suit alleging that defendants failed to accurately read x-rays taken of the decedent's hip in January 1995 and failed to properly diagnose his condition. Instead of diagnosing a metastasized cancer pursuant to the January 1995 x-rays, either defendant Knake or defendant Copland reported that the decedent suffered only from very minimal arthritis in the hip. Although the parties dispute when the cancer was actually diagnosed, plaintiff alleged that it was not diagnosed until April 1995. The decedent died in July 1995.

In her second amended complaint, plaintiff alleged that as a result of defendants' failure to timely render a proper diagnosis, the decedent was not immediately afforded aggressive treatment that may have prolonged his life. She also alleged that defendants' malpractice caused a loss of certain retirement and lifelong medical benefits to the decedent and his dependents. Apparently, decedent and his family would have been entitled to certain enhanced benefits if his employer had been given a full five-month notice of the decedent's terminal condition. The employer was not given a full five-month notice because of the delay in diagnosis.

Defendant hospital moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that plaintiff did not allege a valid medical malpractice claim. Defendant Copland filed a concurrence and defendant Knake, orally during the motion hearing, joined in the motion. The trial court granted summary disposition, and a stipulation was thereafter entered dismissing defendant Huron Valley Radiology, P.C.

On appeal, we review de novo a grant of summary disposition pursuant to MCR 2.116(C)(8). *Beaty v Hertzberg & Golden, PC,* 456 Mich 247, 253; 571 NW2d 716 (1997). All factual allegations in support of the claim are accepted as true, as are any reasonable inferences or conclusions that can be drawn from the facts. *Simko v Blake,* 448 Mich 648, 654; 532 NW2d 842 (1995); *Smith v Stolberg,* 231 Mich App 256, 258; 586 NW2d 103 (1998). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Simko, supra.*

There are two basic issues that must be resolved. First, we must decide whether plaintiff was entitled to file a claim for medical malpractice arising out of the alleged untimely diagnosis of the decedent's cancer. Second, we must decide whether, assuming plaintiff was entitled to file a claim, a valid malpractice claim was pleaded to the extent that the grant of summary disposition pursuant to MCR 2.116(C)(8) was inappropriate.

We find that plaintiff was clearly entitled to bring the medical malpractice cause of action against defendants. MCL 600.2921; MSA 27A.2921 provides:

> All actions and claims survive death. Actions on claims for injuries which result in death shall not be prosecuted

after the death of the injured person except pursuant to the next section. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death.

Defendants take the position that only pending claims survive death pursuant to the statute. The trial court agreed, stating, "[t]alking about all actions and claims survive death. That section requires that the claim be filed prior to the death of the individual." We strongly disagree with this interpretation of the statute.

The goal of statutory construction is to interpret and apply the statute in accordance with the Legislature's intent. *Mahrle v Danke*, 216 Mich App 343, 348; 549 NW2d 56 (1996).

Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning; technical terms are to be accorded their peculiar meanings. *Nothing will be read into a statute that is not within the manifest intention of the Legislature* as gathered from the act itself. The first criterion in determining intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. [*Vanderlaan v Tri-County Community Hosp*, 209 Mich App 328, 332; 530 NW2d 186 (1995) (citations omitted, emphasis added).]

In this case, the plain language of the statute states that "[a]ll actions and claims survive death." It does not state that all *pending* actions and claims survive death. To read the term "pending" into the statute would amount to judicial construction where none is warranted.

In *Hardy v Maxheimer*, 429 Mich 422, 436-438; 416 NW2d 299 (1987), the Court discussed the history of § 2921. It noted that early in the legislative development of the survival act, several causes of action, including actions for fraud, deceit, and negligent injuries to persons were allowed to survive the death of a person who could make the claim. *Hardy, supra* at 436. The list of actions that survived a claimant's death was expanded in 1948. *Id.* at 437. The Court also noted that in 1961, however, the Legislature abandoned the "laundry list" approach to the survival act and enacted the current version of the statute, which allows *all* claims to survive death. *Id.* The intent of the Legislature was stated in the Committee Comment accompanying the revised survival act:

> "*This section drastically changes the present law, CL (1948) 612.32.* At common law, personal rights of action died with the person. This seemed manifestly unfair in certain cases, so Survival Acts were written to allow certain actions to survive. *There is no good reason for allowing some actions to survive, and not others, apart from cultural inertia.* Since the actions which have not survived in the past are tort actions, it is pertinent to consider the theory of tort damages.

> "One purpose of damages in tort is to compensate the injured party. This purpose is defeated if the action does not survive the death of the injured party, or the death of the wrongdoer. *Damages in tort are also thought to serve an exemplary purpose, even when not denominated 'punitive.' This purpose is defeated if the action does not survive.*

> "This section is a logical advance in the legislation in this area. That it has not been made earlier may be due to the unfortunate approach of the statutes in listing those actions which do survive, and thus overlooking those which the statute failed to cover. This section has the added advan-

tage of simplicity in application." [*Id.* at 437-438, quoting the Committee Comment (emphasis in original).]

The Court declared that the language of § 2921 was sweeping and unambiguous and was "universally applicable to *all* actions and claims which arise under the Revised Judicature Act." *Id.* at 438 (emphasis in original).

In this case, any medical malpractice claim that the decedent had against defendants survived his death. See *Falcon v Memorial Hosp*, 436 Mich 443, 469; 462 NW2d 44 (1990) (LEVIN, J.). There did not have to be an action pending at the time of his death. When a person dies without having filed any claims or actions that he may have, the decedent's personal representative may file the surviving action. See MCL 600.5852; MSA 27A.5852.

> [T]he personal representative of a deceased who asserts a cause of action on behalf of a deceased stands in the deceased's place for all purposes *incident to the enforcement of that claim, including rights and privileges personal to the deceased in his lifetime. [McNitt v Citco Drilling Co*, 60 Mich App 81, 88; 230 NW2d 318 (1975) (emphasis in original).]

Thus, we find that plaintiff had the right to file any malpractice action that the decedent may have had.

In making this ruling, we would be remiss if we did not address the parties' arguments with regard to the wrongful death statute, MCL 600.2922; MSA 27A.2922. Plaintiff relies on § 2922 to find support for her request for certain economic damages and wrongfully concludes that pursuant to § 2921, she was required to file suit in accordance with § 2922. Defendants also advance various theories with regard to plaintiff's

claims under the wrongful death statute. The wrongful death statute has no bearing on this case and citation of it under the circumstances is not only curious, but also creates confusion. We believe that the confusion stems from the fact that in addition to providing that all actions and claims survive death, § 2921 provides special instructions with regard to claims for injuries that result in death. It directs that *those* claims must be pursued under § 2922. It also provides that if an action is pending at the time of death the claims *may* be amended to bring the action in compliance with § 2922, and if the action is not amended to comply, no additional damages resulting from the death can be obtained. Neither of the provisions apply to this case. This is not a wrongful death case. Plaintiff readily concedes that she is not alleging that defendants' conduct caused injuries that resulted in death. Rather, she is alleging that defendants' conduct caused economic injuries and that defendants' conduct caused pain and suffering and failed to prolong the decedent's life. Moreover, this is not a case where the decedent had a cause of action for his injuries pending at the time of death and the action needed to be amended when he succumbed to death from those injuries. The wrongful death statute is inapplicable, and further discussion of it is unwarranted.

Pursuant to § 2921, plaintiff was entitled to bring any medical malpractice action that her decedent would have had. Pursuant to § 5852, she simply needed to prosecute that action in her own name as personal representative of the decedent's estate. Thus, we turn our attention to the issue whether there is a viable medical malpractice action.

The elements of an action for negligence include the existence of a duty, a breach of the standard of care, causation in fact, legal or proximate causation, and damages. *Malik v William Beaumont Hosp*, 168 Mich App 159, 168; 423 NW2d 920 (1988), citing *Moning v Alfono*, 400 Mich 425, 437; 254 NW2d 759 (1977). In a medical malpractice case, the duty owed arises from the physician-patient relationship. *Malik, supra.* Here, plaintiff alleged that defendant physicians owed a duty to the decedent, and she alleged sufficient facts to demonstrate that there was a relationship between the defendant physicians and the decedent to the extent that a duty arose.[1] Plaintiff also alleged a breach of the standard of care. She alleged that defendants owed a duty to interpret the January 24, 1995, x-rays in a manner consistent with that of reasonably prudent radiologists and failed to do so. She alleged that while the defendants interpreted the x-rays as showing "very minimal arthritis" in the decedent's hip, the x-rays really showed the presence of a metastatic malignancy. Plaintiff also alleged that defendants' conduct caused injury and damages:

> Had Defendants found and disclosed the metastatic malignancy present in the x-rays of John Theisen taken by Defendants on January 24, 1995, John Theisen and his dependents would have been entitled to certain retirement and life-long medical benefits and health coverage from the decedent's employer . . . .
>
> Had Defendants properly diagnosed the metastatic malignancy on January 24, 1995, John Theisen would have been subject to treatment which would have diminished or con-

---

[1] We agree with defendants that there was no duty between the defendants and plaintiff to support a medical malpractice action.

trolled the spread of cancer, prolonged his life and otherwise permitted him to maximize the remainder of his life.

As a result of Defendants' breach of duty and the applicable standard of care, John Theisen suffered economic and non-economic injuries including, but not limited to, loss of certain retirement benefits, loss of certain disability payments from his employer, life-long medical benefits and health coverage for his dependents, pain and suffering, anxiety, agony, humiliation, and loss of the enjoyments of life.

We find that plaintiff clearly alleged all the necessary elements for a medical malpractice claim. However, keeping in mind that this is a survival action, if the damages alleged by plaintiff were not damages that could have been recovered by the decedent had he lived and filed this suit on his own behalf, plaintiff has failed to state a claim. Recall that plaintiff is standing in the shoes of the decedent and prosecuting his action for him. *McNitt, supra.*

Our review leads to the conclusion that not all the damages alleged by plaintiff would have been recoverable by the decedent had he filed this action himself. Plaintiff was not entitled to pursue her claim with regard to the alleged loss of enhanced benefits for the decedent's dependents. Plaintiff's theory is that the postdeath benefits from the decedent's employer are less than they would have been had the malpractice not occurred. Logically, the decedent could never have pursued damages for the loss of enhanced benefits for his dependents because the damages were contingent on the timing of his death. Recovery is not permitted in a tort action for remote, contingent, or speculative damages. *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 33; 436 NW2d 70 (1989). Therefore, we hold that plaintiff failed to state a claim with respect to those damages.

To the extent, however, that plaintiff alleges that the malpractice caused the decedent to receive less benefits while he was alive and on disability, there is a claim. In other words, if the delay in diagnosis caused the decedent economic harm while he was still living, plaintiff may, if the other elements of the case are proved, recover those damages. Plaintiff may also be able to recover any pain and suffering damages related to the malpractice. Damages recoverable in malpractice actions include pain and suffering. *Penner v Seaway Hosp*, 169 Mich App 502, 508-509; 427 NW2d 584 (1988), quoting *Stewart v Rudner*, 349 Mich 459, 467-468; 84 NW2d 816 (1957). In so ruling, we note that there might not be a question of fact with regard to these damages because it appears that the decedent may not have suffered economic injury himself or pain and suffering related to the malpractice itself because plaintiff apparently concedes that the death would have occurred even if the proper diagnosis had been made in January. However, plaintiff has alleged these damages, which may be recoverable, and thus the grant of summary disposition pursuant to MCR 2.116(C)(8) with regard to those parts of plaintiff's action was inappropriate.

We also note that plaintiff failed to properly plead that the decedent would have been entitled to collect damages for loss of opportunity to prolong his life. MCL 600.2912a(2); MSA 27A.2912(1)(2) states that a plaintiff cannot recover for the loss of an opportunity to achieve a better result unless the opportunity was greater than fifty percent.[2] Plaintiff here did not plead

---

[2] *Falcon, supra*, found that a loss of opportunity to survive was actionable where the loss of opportunity to survive was 37.5 percent. That hold-

that had the cancer been diagnosed in January, it would be more likely than not that the decedent's life would have been prolonged or the cancer controlled.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

ing however was superseded by the "greater than 50%" language of MCL 600.2912a(2); MSA 27A.2912(1)(2).