DYKES v WILLIAM BEAUMONT HOSPITAL

Docket Nos. 214284, 218386. Submitted October 11, 2000, at Detroit.
Decided June 19, 2001, at 9:00 A.M. Leave to appeal sought.

Vicky Dykes, as personal representative of the estate of James Dykes,
deceased, brought an action in the Oakland Circuit Court against
William Beaumont Hospital and Dr. Charles Main, alleging that the
defendants were negligent in the diagnosis and treatment of a
respiratory infection that the decedent suffered and that the defen-
dant's medical malpractice was a proximate cause of the decedent's
death. The decedent, who had previously been diagnosed with
acute lymphocytic leukemia that had required extensive medical
treatment, was twice admitted to the defendant hospital with symp-
toms of a respiratory infection and was twice discharged. During
his third admission with the same symptoms, tests revealed the
presence of pseudomonas bacteremia, but no sepsis, and the dece-
dent was placed on medications for pseudomonas and was dis-
charged with instructions to have follow-up blood cultures taken in
six days. Two days after being discharged from the defendant hos-
pital, the decedent died of pseudomonas septicemia. The plaintiff
alleged that the defendant hospital violated the standard of care by
failing to perform a bronchoscopy or an open lung biopsy to iden-
tify the source of the decedent's respiratory problems and by failing
to recognize the need for aggressive antibiotic therapy. The plain-
tiff's complaint was accompanied by an affidavit of meritorious
claim in which the plaintiff's expert witness stated that, had the
standard of care been followed, the decedent would have had a
greater than fifty percent chance of surviving the infectious pro-
cess. Subsequently, in deposition testimony, that expert witness
testified that he could not say with a reasonable degree of medical
certainty that the omitted treatments would have made a difference
in the decedent's outcome or would have prolonged the decedent's
life. The defendant hospital moved for summary disposition on the
basis that the plaintiff failed to establish a genuine issue of material
fact regarding the element of causation. The court, Alice L. Gilbert,
J., granted summary disposition for the defendant hospital, agree-
ing that the plaintiff had not met her burden of showing a genuine
issue of material fact regarding whether the decedent's death more
probably than not was caused by the defendant hospital's negli-

gence. The plaintiff appealed (Docket No. 214284). The trial court thereafter entered an order awarding the defendant hospital mediation sanctions against the plaintiff. The plaintiff appealed by delayed leave granted (Docket No. 218386). The appeals were consolidated.

The Court of Appeals *held*:

1. To prove medical malpractice, a plaintiff must show that the defendant hospital's negligence proximately caused the plaintiff's injuries. By statute, MCL 600.2912a(2), a plaintiff alleging medical malpractice has the burden of proving the injury suffered more probably than not was proximately caused by the negligence of the defendant and cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than fifty percent.

2. The trial court properly granted summary disposition for the defendant hospital because the deposition testimony of the plaintiff's sole medical expert witness failed to establish the requisite causal link between the defendant hospital's conduct and the decedent's outcome or the prolongation of the decedent's life. Given the deposition testimony of the medical expert, the plaintiff cannot rely on the affidavit of that witness to establish the existence of a genuine issue of material fact concerning the question of proximate causation.

3. A mediation evaluation found no liability and awarded no recovery with respect to the plaintiff's claim against Dr. Main, but did find liability and awarded the plaintiff a recovery against the defendant hospital. The plaintiff accepted the mediation evaluation, but, pursuant to MCR 2.403(L)(3)(b)(i), made a limited acceptance that was conditioned on the acceptance of the evaluation by both Dr. Main and the defendant hospital. Dr. Main accepted the evaluation, but the defendant hospital did not. The plaintiff's limited acceptance under MCR 2.403(L)(3)(b) does not constitute a rejection with respect to the defendant hospital, because the defendant hospital did not accept the mediation evaluation, and, accordingly, the trial court erred in awarding mediation sanctions pursuant to MCR 2.403(O)(1).

Affirmed in part and reversed in part.

NEFF, P.J., concurring in part and dissenting in part, stated that the trial court erred in granting summary disposition for the defendant hospital on the basis that the plaintiff had failed to establish causation. The affidavit of the expert witness clearly states that had the decedent been provided with the appropriate standard of care it was within a reasonable medical probability that the decedent had a greater than fifty percent chance of surviving the infec-

tious process from which he was suffering and that the failure to provide the appropriate standard of care was a proximate cause of the damages sought by the plaintiff. None of the questions that were answered by that witness in the deposition testimony specifically addressed whether it was more probable than not that the decedent would have survived his infection in the absence of the defendant hospital's alleged negligence. Although the evidence on the record presents a close question concerning the issue of proximate causation, the deposition testimony does not negate the statement concerning proximate causation made in the affidavit, and there remains a genuine issue of material fact concerning causation. The matter should be remanded to the trial court for further proceedings.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — PROXIMATE CAUSATION — AFFIDAVIT OF MERIT — DEPOSITIONS.

Summary disposition is properly granted for a defendant in a medical malpractice action where the statement concerning proximate causation made by a health professional in the affidavit of merit filed with the complaint is contradicted by that health professional in deposition testimony and there are no other medical experts for the plaintiff.

2. COSTS — MEDIATION SANCTIONS — LIMITED ACCEPTANCE.

A party's acceptance of a mediation evaluation involving multiple opposing parties on the condition that all the opposing parties accept the evaluation is not deemed to be a rejection with respect to any opposing party that does not accept the evaluation for the purpose of determining whether mediation sanctions should be imposed (MCL 2.403[L][3][c], 2.403[O][1]).

*McKeen & Associates, P.C.* (by *Brian J. McKeen* and *Ramona C. Howard*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for the defendant.

Before: NEFF, P.J., and TALBOT and J. B. SULLIVAN,* JJ.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Per Curiam. In these consolidated cases, plaintiff appeals as of right an order of the circuit court dismissing her medical malpractice claim (Docket No. 214284) and appeals by delayed leave granted an order awarding mediation sanctions against plaintiff (Docket No. 218386). We affirm the trial court' s grant of summary disposition and reverse the award of mediation sanctions.

I

Plaintiff filed this medical malpractice action against defendants[1] following the death of her sixteen-year-old son, James, who was treated in early 1992 at defendant William Beaumont Hospital (herein defendant) for a respiratory infection. James had been diagnosed with acute lymphocytic leukemia in 1978 and had an extensive medical history, including repeated chemotherapy treatment, a spleenectomy, and two bone marrow transplants.[2]

Following the second transplant in August 1991, James developed symptoms of a respiratory infection and was admitted to defendant on February 7, 1992. Defendant provided a course of diagnosis and treatment over the next two months, and James was subsequently discharged and readmitted to defendant twice during this time. Following readmission on March 26, 1992, James' diagnosis indicated the presence of pseudomonas bacteremia, but ruled out sep-

---

[1] Defendant Charles Main, M.D., was dismissed from the action by stipulation of the parties and is not involved in this appeal.

[2] The transplants were performed in Seattle, Washington. Upon release, James returned to defendant for aftercare treatment.

sis.[3] James was placed on medications for the pseudomonas. On March 31, 1992, defendant discharged James with instructions for follow-up blood cultures on April 6, 1992. James died on April 2, 1992, from pseudomonas septicemia.[4]

Plaintiff brought this medical malpractice action alleging that defendant was negligent in diagnosing James' problem as recurrent leukemia rather than a respiratory infection and in failing to provide a proper course of treatment. Specifically, plaintiff claimed that defendant violated the standard of care by failing to perform a bronchoscopy or an open lung biopsy to identify the source of James' respiratory problems and by failing to recognize that aggressive antibiotic therapy was warranted. In the affidavit of meritorious claim filed by plaintiff, plaintiff's expert witness, Michael E. Trigg, M.D., stated that "had the standard of care been followed, James Dykes would [have] had a greater then [sic] 50% chance of surviving the infectious process from which he suffered . . . ."

Following Dr. Trigg's deposition,[5] defendant moved for summary disposition on the basis that plaintiff failed to establish a genuine issue of material fact regarding the element of causation. Defendant argued that because Dr. Trigg testified that he could not state

---

[3] Sepsis is defined as "the presence in the blood or other tissues of pathogenic microorganisms or their toxins." *Dorland's Illustrated Medical Dictionary* (29th ed), pp 1623-1624.

[4] Septicemia, also called blood poisoning, is defined as a "systemic disease associated with the presence and persistence of pathogenic microorganisms or their toxins in the blood." *Dorland's Illustrated Medical Dictionary,* (29th ed), p 1624. Plaintiff's brief describes pseudomonas septicemia as a severe bacterial infection.

[5] During oral argument of this appeal, there was some question whether Dr. Trigg's deposition was taken for discovery purposes or de bene esse to preserve his testimony. The deposition transcript unequivocally reflects that it was a discovery deposition.

that the omitted treatments would have changed the outcome or prolonged James' life, plaintiff offered no evidence of causation beyond mere speculation and conjecture. The circuit court agreed and concluded that plaintiff had not met her burden of showing a genuine issue of material fact regarding whether it was more likely than not, but for defendant's conduct, James' injuries would not have occurred.

Following the dismissal, defendant moved for the taxation of costs against plaintiff as mediation sanctions under MCR 2.403(O)(1). The court granted the motion and awarded defendant $48,271.45.

II

In Docket No. 214284, plaintiff appeals the order of summary disposition. We affirm. This Court reviews de novo an order granting summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim. *Id.* A court must consider the pleadings, depositions, affidavits, admissions, and other documentary evidence submitted by the parties. *Id.* If the party opposing the motion presents evidentiary proofs creating a genuine issue of material fact, summary disposition is improper. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455, n 2; 597 NW2d 28 (1999); *Murad v Professional & Administrative Union Local 1979*, 239 Mich App 538, 541; 609 NW2d 588 (2000).

A

To prove medical malpractice, a plaintiff must show that the defendant's negligence proximately

caused the plaintiff's injuries. *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). Under Michigan law, proximate causation is subject to a more probable than not standard:

> In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%. [MCL 600.2912a(2).]

Thus, to recover for the loss of an opportunity to survive or an opportunity to achieve a better result, a plaintiff must show that had the defendant not been negligent, there was a greater than fifty percent chance of survival or of a better result. *Wickens v Oakwood Healthcare System*, 242 Mich App 385, 392; 619 NW2d 7 (2000), lv gtd 463 Mich 907 (2000); *Theisen v Knake*, 236 Mich App 249, 259; 599 NW2d 777 (1999).

Plaintiff's malpractice claim was premised on the theory that had defendant not been negligent, James more probably than not would have survived his infection, as Dr. Trigg stated in his affidavit:

> Within a reasonable medical probability had the standard of care been followed, James Dykes would [have] had a greater then [sic] 50% chance of surviving the infectious process from which he suffered; thus, the violation from [sic] the standard of care is a proximate cause of the damages claimed by Plaintiff.

In his deposition testimony, however, Dr. Trigg contradicted his affidavit. Defense counsel queried Dr.

Trigg whether there was any way of knowing whether, "if [James] had received anti-pseudomonas medication during the February 12 hospitalization, [ ] he would have lived longer than April 2, 1992." Dr. Trigg responded that there was "no way of knowing that." Dr. Trigg also testified contrary to his affidavit with regard to defendant's failure to perform a bronchoscopy or an open lung biopsy:

> Q. [I]s it a fair statement to say that neither you nor I, as we sit here today, know what, if anything, a bronchoscopy would have revealed during [the February 7 to February 9, 1992 hospitalization]?
>
> A. That's a fair statement.
>
> Q. And is it also fair to say that because we don't know that, neither you nor I, or [sic] anyone can say within a reasonable degree of medical certainty that a bronchoscopy during that February 7 through 9, 1992 hospitalization would have made any difference in James Dykes' outcome and prolonged his life?
>
> A. That's a fair statement.
>
> *     *     *
>
> Q. [I]s it fair to say that as we sit here today, neither you nor I can conclude, or [sic] anyone else, what a bronchoscopy and or an open lung biopsy would have revealed during the February 12 hospitalization within a reasonable degree of medical certainty? Is that a fair statement?
>
> A. My clinical judgement [sic] and assessment is it would have revealed a bacterial problem. I think that it would have been very useful, but I can't know that for certain.

We conclude that the trial court properly granted summary disposition because the deposition testimony of plaintiff's sole expert witness failed to establish the requisite causal link between defendant's conduct and James' life expectancy or death. Dr. Trigg's deposition testimony directly contradicted his affida-

vit regarding the issue of causation. Defense counsel questioned Dr. Trigg regarding defendant's failure to diagnose pseudomonas and to recognize that antipseudomonas medication was indicated. Dr. Trigg conceded that there was "no way of knowing" whether James would have lived beyond April 2, 1992, if defendant had treated him with the recommended antibiotics. Nor could Dr. Trigg offer an opinion regarding James' life expectancy if the recommended treatment had been given. Dr. Trigg also acknowledged that it was not possible to state within a reasonable degree of medical certainty whether a bronchoscopy or an open lung biopsy would have made any difference in the outcome or prolonged James' life.[6] Viewing the evidence in the light most favorable to plaintiff, plaintiff failed to demonstrate a genuine issue of material fact regarding the element of causation. *Weymers, supra* at 647-648.[7]

Further, in light of Dr. Trigg's deposition testimony, plaintiff may not rely on Dr. Trigg's affidavit to establish the existence of a genuine issue of material fact. *Mitan v Neiman Marcus*, 240 Mich App 679, 682-683;

---

[6] Our dissenting colleague characterizes defense counsel's questions as eliciting a response in terms of absolute certainties, "i.e., a one-hundred percent probability," and interprets Dr. Trigg's responses as "a reluctance to state his conclusions in terms of absolute certainties," *post* at 486. We note that defense counsel's questions did not seek answers from Dr. Trigg in terms of *absolute* certainty. Rather, he was asked if he could state *within a reasonable degree of medical certainty* whether defendant's failure to properly diagnose and treat James affected the outcome or James' life expectancy. Dr. Trigg was unable to do so.

[7] In her response to defendant's motion for summary disposition, plaintiff relied on Dr. Trigg's testimony that, in his opinion, James' infectious process was more likely than not bacterial in nature. This question of probabilities is not the relevant inquiry. In order to show a genuine issue of material fact regarding causation, plaintiff must offer evidence that it is more likely than not that, but for defendant's conduct, a different result would have obtained. *Weymers, supra* at 647-648.

613 NW2d 415 (2000). Plaintiff argues that notwith-
standing Dr. Trigg's deposition testimony, his affidavit
states that if defendant had followed the standard of
care, James would have had a greater than fifty per-
cent chance of surviving his infection. Plaintiff main-
tains that this conflicting testimony presents a ques-
tion of fact for the jury. We disagree that Dr. Trigg's
affidavit creates a question of fact sufficient to defeat
summary disposition.

This Court has held that " 'parties may not contrive
factual issues merely by asserting the contrary in· an
affidavit after having given damaging testimony in a
deposition.' " *Mitan, supra* at 683, quoting *Kaufman
& Payton, PC v Nikkila*, 200 Mich App 250, 256-257;
503 NW2d 728 (1993), citing *Downer v Detroit Receiv-
ing Hosp*, 191 Mich App 232, 233-234; 477 NW2d 146
(1991). In *Barlow v John Crane-Houdaille, Inc*, 191
Mich App 244; 477 NW2d 133 (1991), the trial court
granted the defendant's motion for summary disposi-
tion notwithstanding inconsistencies between the
plaintiff's deposition testimony and his subsequently
filed affidavit. The *Barlow* Court relied on the earlier
holding in *Gamet v Jenks*, 38 Mich App 719; 197
NW2d 160 (1972), and restated this principle and its
underlying rationale:

> "As a result of his own deposition testimony, plaintiff's
> ability to present a case was challenged. His affidavit
> merely restated his pleadings. Deposition testimony damag-
> ing to a party's case will not always result in summary judg-
> ment. However, when a party makes statements of fact in a
> 'clear, intelligent, unequivocal' manner, they should be con-
> sidered as conclusively binding against him in the absence
> of any explanation or modification, or of a showing of mis-
> take or improvidence. The purpose of GCR 1963, 117 [now
> part of MCR 2.116] is to allow the trial judge to determine

whether a factual issue exists. This purpose is not well served by allowing parties to create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition. As was stated in *Perma Research and Development Co v The Singer Co*, (CA 2, 1969), 410 F2d 572, 578:

> " 'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " [*Barlow, supra* at 250, quoting *Gamet, supra* at 726 (citations omitted).]

See also *Downer, supra* at 233-234; *Peterfish v Frantz*, 168 Mich App 43, 54-55; 424 NW2d 25 (1988); *Stefan v White*, 76 Mich App 654, 660; 257 NW2d 206 (1977). In *Kaufman & Payton, PC, supra* at 257, this Court again rejected a party's attempt to contrive factual issues "by relying on an affidavit when unfavorable deposition testimony shows that the assertion in the affidavit is unfounded." This Court suggested that this principle "is not limited to *parties* who make contradictory assertions. The principle that contradictory affidavits should be disregarded stands irrespective of the identity of the maker of the conflicting statements." *Id.*

The cited cases involved the filing of an affidavit after damaging deposition testimony had been given, whereas in the instant case, the affidavit of merit was filed with plaintiff's complaint before deposition testimony was taken. We believe that this is not a meaningful distinction and the same rationale applies. Dr. Trigg's affidavit of meritorious claim restated the pleadings and generally articulated the threshold of proof that defendant's breach of the standard of care

was a proximate cause of plaintiff's damages. In con-
trast, at deposition, Dr. Trigg was subjected to cross-
examination and responded to specific questions
regarding defendant's failure to administer antibiotic
treatment and to perform a bronchoscopy or lung
biopsy. As the *Barlow* Court recognized, the utility of
summary disposition would be diminished if a party
could defeat summary disposition by filing an affida-
vit after testifying unfavorably at deposition. *Barlow,
supra* at 250; *Gamet, supra* at 726. Indeed, in medical
malpractice cases, a plaintiff is required to file an affi-
davit of meritorious claim by a health professional at
the commencement of the action. MCL 600.2912d. In
such cases, summary disposition would rarely, if ever,
be warranted even if effective cross-examination of
that person at deposition negates an element of the
plaintiff's prima facie case.

Accordingly, we affirm the trial court's grant of
summary disposition because plaintiff failed to show
the existence of a genuine issue of material fact with
regard to the question of causation.

III

In Docket No. 218386, plaintiff appeals the award
of costs under MCR 2.403(O)(1). Plaintiff contends
that the court erred in awarding costs on the basis of
her limited acceptance of the mediation award, MCR
2.403(L)(3). We agree.

A

The interpretation and application of court rules
presents a question of law that is reviewed de novo.
*Grzesick v Cepela,* 237 Mich App 554, 559; 603 NW2d

809 (1999); *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 129; 573 NW2d 61 (1997). MCR 2.403(L)(3)(c) provides:

> If a party makes a limited acceptance under subrule (L)(3)(b) and some of the opposing parties accept and others reject, for the purposes of the cost provisions of subrule (O) the party who made the limited acceptance is deemed to have rejected as to those opposing parties who accept.

In this case, the mediation evaluation awarded zero against Dr. Main and $75,000 against defendant. Plaintiff accepted the mediation evaluation as a limited acceptance under MCR 2.403(L)(3)(b)(i), conditioned on the acceptance of both Dr. Main and defendant. Dr. Main accepted the mediation evaluation, and defendant rejected it. We conclude that plaintiff's limited acceptance of the award does not constitute a rejection with respect to defendant because defendant did not accept the mediation evaluation.

The Supreme Court previously reversed a decision of this Court that affirmed mediation sanctions with regard to a limited acceptance, stating:

> Under MCR 2.403(L)(3)(c), for the purposes of the costs provision of subrule (O), National Precast's limited acceptance is not deemed a rejection with regard to plaintiffs because plaintiffs did not accept the mediation panel's evaluation. [*Baldasan v Nat'l Precast, Inc*, 451 Mich 894; 550 NW2d 525 (1996).]

An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent. See *People v Crall*, 444 Mich 463,

464, n 8; 510 NW2d 182 (1993). We find the order in *Baldasan* precedent for our decision.

Even without the guidance of this precedent, we reach the same conclusion given the language and purpose of MCR 2.403. This Court should construe a court rule in accordance with the ordinary and approved usage of its language in light of the purpose the rule seeks to accomplish. *Bush v Mobil Oil Corp*, 223 Mich App 222, 226; 565 NW2d 921 (1997). The Court should avoid construing a court rule in a manner that results in a part of the rule becoming nugatory or surplusage. *Grzesick, supra* at 560.

MCR 2.403(L)(3)(c) specifies that "the party who made the limited acceptance is deemed to have rejected as to those opposing parties *who accept*" (emphasis added). This part of the court rule would be rendered nugatory, contrary to the rules of construction, if the limited acceptance party was also deemed a rejecting party with respect to opposing parties *who reject*. Further, the purpose of the mediation sanction rule "is to encourage settlement and deter protracted litigation by placing the burden of litigation costs upon the party that required that the case proceed toward trial by rejecting the mediator's evaluation." *Broadway Coney Island, Inc v Commercial Union Ins Cos (Amended Opinion)*, 217 Mich App 109, 114; 550 NW2d 838 (1996). In this case, had defendant accepted the mediation evaluation, the litigation would have concluded, given plaintiff's prior limited acceptance. Thus, we conclude that under the language of MCR 2.403(L)(3)(c), a party who makes a limited acceptance of an award is deemed to have rejected it only with respect to those opposing parties

who accepted, but not with respect to those who rejected, the award.

Accordingly, because plaintiff's conditional acceptance was not a rejection with respect to defendant, defendant was not entitled to mediation sanctions under MCR 2.403(O)(1). Therefore, the trial court erred in awarding defendant mediation sanctions.

B

In light of our determination that the circuit court erred in awarding mediation sanctions, we need not address plaintiff's remaining claims concerning the amount awarded and the form of the order.

Affirmed in part and reversed in part.

NEFF, P.J. *(concurring in part and dissenting in part)*. I respectfully dissent from the majority's decision to affirm the trial court's grant of summary disposition for defendant.

I

As noted by the majority, plaintiff's malpractice claim was premised on the theory that had defendant not been negligent, James more probably than not would have survived his infection, as Dr. Trigg stated in his affidavit:

> Within a reasonable medical probability had the standard of care been followed, James Dykes would [have] had a greater then [sic] 50% chance of surviving the infectious process from which he suffered; thus, the violation from the standard of care is a proximate cause of the damages claimed by Plaintiff.

The circuit court found that plaintiff failed to establish causation because, contrary to his affidavit statement, Dr. Trigg testified during his deposition "that he could not say within a reasonable degree of medical certainty that a bronchoscopy or antibiotic treatment would have made a difference in the outcome and prolonged [James'] life." My review of Dr. Trigg's deposition testimony does not convince me that his answers to defense counsel's deposition questions defeat causation, as defendant contends and the majority concludes. I read the responses as more a reluctance to state his conclusions in terms of absolute certainties, rather than evidence that causation was lacking under the more probable than not standard.

During Dr. Trigg's deposition, he responded to defense counsel's specific questions, none of which addressed whether it was "more probable than not" that James would have survived his infection absent defendant's alleged negligence. Counsel queried Dr. Trigg whether there was any way of "knowing" whether, "if [James] had received anti-pseudomonas medication during the February 12 hospitalization, that he would have lived longer than April 2, 1992." Dr. Trigg responded that there was "no way of knowing that." I cannot conclude that this testimony defeats causation. The standard for causation in this instance is whether it is more likely than not that James would have survived the infectious process, i.e., a greater than fifty percent chance, not whether he definitively would have lived beyond a certain date, i.e., a one-hundred percent probability. For the same reason, I do not find the fact that Dr. Trigg

could not opine concerning James' life expectancy dispositive with regard to the issue of causation.

Defense counsel queried Dr. Trigg analogously with regard to defendant's failure to perform a bronchoscopy or an open lung biopsy:

> *Q.* [I]s it a fair statement to say that neither you nor I, as we sit here today, know what, if anything, a bronchoscopy would have revealed during that time [the February 7 to February 9, 1992 hospitalization]?
>
> *A.* That's a fair statement.
>
> *Q.* And is it also fair to say that because we don't know that, neither you nor I, or anyone can say within a reasonable degree of medical certainty that a bronchoscopy during that February 7 through 9, 1992 hospitalization would have made any difference in James Dykes' outcome and prolonged his life?
>
> *A.* That's a fair statement.
>
> *    *    *
>
> *Q.* [I]s it fair to say that as we sit here today, neither you nor I can conclude, or anyone else, what a bronchoscopy and or an open lung biopsy would have revealed during the February 12 hospitalization within a reasonable degree of medical certainty? Is that a fair statement?
>
> *A.* My clinical judgement and assessment is it would have revealed a bacterial problem. I think that it would have been very useful, but I can't know that for certain.[1]

---

[1] Dr. Trigg's response to counsel's next question further convinces me that his answer to the previous question was an expression of his reluctance to state an absolute certainty, rather than an inability to provide the vital link of causation:

*Q:* Do you have any idea what bacteria it would have identified?

*A:* No. Except that there was a sputum culture obtained in early February which showed on gram stain numerous gram-negative bacilli and neutrophils. And there was a dermatology consultation which suggested a pseudomonas-like rash during this hospitalization. So it certainly was within the differential that a pseudomonas infection could be found.

In view of the line of questioning, which speaks more to absolutes than probabilities, I strongly disagree that Dr. Trigg's deposition testimony defeats any link of causation between the diagnosis and treatment of James' respiratory infection and his ultimately succumbing to pseudomonas septicemia.

Finally, I cannot conclude that Dr. Trigg's testimony with regard to pseudomonas sepsis, in particular, defeats causation in this case.[2] I recognize that the cause of death was determined to be pseudomonas septicemia. However, plaintiff's claim of malpractice was based on defendant's failure to properly diagnose and aggressively treat James' infection in the early stages, before it could progress to the stage that it was likely to be fatal, given his medical history. Dr. Trigg opined that James' condition made him particularly susceptible to bacterial infections, that his symptoms during the early February hospitalization indicated an acute bacterial infection, and that defendant should have acted accordingly. Dr. Trigg's affidavit statement is that, had defendant not violated the standard of care, James more likely than not would have survived the infectious process, i.e., there was a greater than fifty percent chance the infection would not have progressed to sepsis/septicemia. I cannot conclude from the record that plaintiff's theory is defeated by the fact that pseudomonas sepsis is more often than not a fatal infection for immunocompromised patients.

---

[2] Dr. Trigg stated: "I think that patients who have compromised immune systems that are [sic] following a bone marrow transplant who develop a pseudomonas sepsis have a greater-than-fifty-percent chance of dying of their infection, but it's not a hundred percent chance."

The record evidence in this case presents a close question with regard to the issue of proximate causation. However, the summary disposition standard requires that we view the evidence in a light most favorable to the nonmoving party. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). My reading of Dr. Trigg's deposition testimony leaves me unconvinced that it negates his affidavit statement that, had the standard of care been followed, James would have had a greater than fifty percent chance of surviving the infectious process. Where there is a genuine issue of material fact with regard to causation, summary disposition is improper. *Id.* at 454-455; *Bilicki v W T Grant Co*, 382 Mich 319, 323-326; 170 NW2d 30 (1969). I would reverse the order dismissing plaintiff's malpractice case and remand this matter to the trial court for further proceedings.

II

I fully concur in the reasoning and result reached by the majority with regard to the award of costs to defendant under MCR 2.403(L)(3).