# STATE OF MICHIGAN

# COURT OF APPEALS

COLLEEN MOQUIN, Individually and as Next
Friend of MOLLIE MOQUIN, a Minor,

        Plaintiff-Appellant/Cross-Appellee,

v

FLINT CHILDREN'S CENTER, P.C., and DR.
RAJALAKSHMI SANKARAN,

        Defendants-Appellees,

and

REGIONAL MEDICAL IMAGING, P.C., DR.
MARGARET D. TAHA, and DR. VENKAT
RUDRARAJU, M.D.,

        Defendants-Appellees/Cross-
        Appellants,

and

HURLEY MEDICAL CENTER and JUANITO
BOADO, M.D.,

        Defendants.

UNPUBLISHED
October 15, 2015

No.  319801
Genesee Circuit Court
LC No.  10-095097-NM

Before:  METER, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals as of right the trial court's order granting defendants' motions for summary disposition pursuant to MCR 2.116(C)(10). Defendants Dr. Margaret D. Taha, Regional Medical Imaging, P.C., and Dr. Venkat Rudraraju, M.D., have filed cross-appeals, challenging the trial court's decision denying their motions to strike plaintiff's radiology expert and denying their related motions for summary disposition based on the lack of supporting expert testimony.  We affirm in part, reverse in part, and remand for further proceedings.

-1-

In July and August 2008, then eight-year-old Mollie Moquin visited her pediatrician, defendant Dr. Rajalakshmi Sankaran, with continuing complaints of leg pain. She was referred for x-rays, which were reviewed by Dr. Taha and Dr. Rudraraju. Dr. Sankaran was associated with defendant Flint Children's Center, P.C., and Dr. Taha was associated with Regional Medical Imaging. Dr. Sankaran did not diagnose any medical problem with Mollie and, according to plaintiff, attributed Mollie's leg pains to "growing pains." Drs. Taha and Rudraraju did not observe any abnormality on x-ray images taken in July and August 2008. The source of Mollie's pain was not determined until February 2009, when other medical professionals discovered a tumor in her pelvic area. She was diagnosed in March 2009 with Ewing sarcoma, a cancer that causes bone tumors. By that time, the cancer had metastasized to a lung. Plaintiff, Mollie's mother and next friend, filed this medical malpractice action against defendants and alleged that the delay in diagnosing and treating Mollie's condition affected her course of treatment and outcome.

Plaintiff's radiology expert, Dr. Jeffrey Shulak, testified at his deposition that Drs. Taha and Rudraraju, both specialists in diagnostic radiology, should have referred Mollie for further procedures based on the images in the July and August 2008 x-ray films, which would have resulted in an earlier diagnosis of Mollie's condition. Dr. Taha, Regional Medical Imaging, and Dr. Rudraraju thereafter filed a motion to strike Dr. Shulak as plaintiff's radiology expert, arguing that, according to his deposition testimony, he did not spend the majority of his professional time practicing in the field of diagnostic radiology during the year immediately preceding the alleged malpractice. Therefore, they argued, he was not qualified to offer expert testimony regarding the standard of care for diagnostic radiology under MCL 600.2169(1). Those defendants also moved for summary disposition, arguing that, without expert testimony from a qualified radiologist, plaintiff could not prove that they violated the standard of care for a radiologist. Relying on a supplemental affidavit from Dr. Shulak that further described the scope of his professional practice in 2007 and 2008, the trial court concluded that Dr. Shulak met the requirements of MCL 600.2169(1) and, therefore, was qualified to testify as an expert in diagnostic radiology. Accordingly, the court denied those defendants' motions.

After plaintiff's experts were deposed, all of the defendants filed additional motions for summary disposition pursuant to MCR 2.116(C)(10), arguing that the evidence showed that Mollie would have been subject to the same course of treatment and outcome even if her condition had been diagnosed earlier, and therefore, the alleged malpractice did not cause any damages. The trial court agreed and granted defendants' motions for summary disposition.

Plaintiff argues that the trial court erred in granting defendants' motions for summary disposition. A trial court's summary disposition decision is reviewed de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). A reviewing court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties. MCR 2.116(G)(5). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula*, 212 Mich App at 48. A court may not assess credibility or determine disputed facts when deciding a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994),

overruled in part on other grounds in *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999).

Plaintiff's expert witnesses, Dr. Claudio Sandoval and Dr. Dennis Patrick Hughes, testified at their depositions that Ewing sarcoma is an aggressive form of cancer that has the ability to metastasize. Therefore, a child who is diagnosed with Ewing sarcoma will receive systemic treatment, meaning to the entire body, at the onset. Testimony indicated that the standard of care requires treatment by chemotherapy (the only type of systemic treatment) without a showing that the disease has spread before chemotherapy is started, and also includes local treatment, such as radiation or surgical intervention. Testimony indicated that because of the location of the tumor in Mollie's pelvic area, radiation was the preferred method for treating the tumor. Defendants argued, and the trial court agreed, that because the disease was very aggressive and Mollie would have received the same treatment if she had been diagnosed earlier, there were no damages caused by the alleged malpractice. We disagree.

In a tort action, one may not recover for remote, contingent, or speculative damages. *Theisen v Knake*, 236 Mich App 249, 258; 599 NW2d 777 (1999). Damages are recoverable if they are a direct result of the defendant's wrongful act. *Sutter v Biggs*, 377 Mich 80, 86; 139 NW2d 684 (1966).

> The general rule, expressed in terms of damages, and long followed in this State, is that in a tort action, the tort-feasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated. [*Id.*]

A plaintiff in a medical malpractice action may recover noneconomic damages, which, at the time applicable to this action, were defined in MCL 600.1483(3) as "damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss."[1] There need not be direct evidence of pain and suffering, which may be inferred from other evidence. *Meek v Dep't of Transp*, 240 Mich App 105, 122; 610 NW2d 250 (2000), overruled on other grounds in *Grimes v Dep't of Transp*, 475 Mich 72; 715 NW2d 275 (2006).

In response to defendants' motions, plaintiff submitted two affidavits from Dr. Sandoval, one that was prepared before plaintiff filed her lawsuit and one that was prepared after Dr. Sandoval's deposition. In an affidavit of merit prepared in December 2010, Dr. Sandoval opined that the delay in diagnosis not only affected the treatment options, but also necessitated more treatment for Mollie's condition. He opined that earlier treatment "more probably than not . . . would have prevented the metastasis of the disease process from the hip area to the lung as well as preventing an increase in the size in the iliac [pelvic] area." He stated "that the area requiring treatment by radiation when the condition was diagnosed in March 2009, resulted in expansion of the field of radiation treatment in order to affect the larger area of her cancer." He believed

---

[1] MCL 600.1483(3) has since been amended.

that "[t]his resulted in a larger area of Mollie's body, including internal organs being exposed to radiation and its potential side effects." In his second affidavit, prepared in October 2013, Dr. Sandoval averred that it was more probable than not that the delay in diagnosis and treatment allowed the primary pelvic tumor to increase in size, "as well as resulting in radiographic evidence of metastasis to the lungs being present when the cancer was diagnosed." He opined that the increase in size of the pelvic tumor "necessitated a wider area of radiation therapy to be given to this patient which would cause the patient increased pain and discomfort." Dr. Sandoval also believed that the delay in diagnosis and treatment "was more likely than not . . . a proximate cause of [a] reoccurrence of [the] cancer . . . in [the] pelvic area," thereby requiring additional chemotherapy and causing additional pain and discomfort.

Dr. Sandoval's affidavits established a question of fact regarding whether the delay in Mollie's diagnosis caused her additional pain and suffering. Although the trial court was correct that the delay in diagnosis did not likely affect the course of treatment that Mollie received, Dr. Sandoval's affidavits indicated that the scope of radiation that Mollie had to endure because of the delay in her diagnosis and treatment was more extensive, which likely affected other organs and increased the pain and suffering she had to endure. Such damages involve a present injury and are compensable in a medical malpractice case. *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 61-62; 631 NW2d 686 (2001).

The trial court appears to have rejected Dr. Sandoval's second affidavit on the basis that it conflicted with his prior deposition testimony. We disagree. "[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Bailey v Schaaf*, 293 Mich App 611, 626; 810 NW2d 641 (2011), aff'd in part and rev'd in part on other grounds 494 Mich 595 (2013) (internal citation and quotation marks omitted); see also *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250, 256-257; 503 NW2d 728 (1993). However, an affidavit that clarifies or expands upon previous testimony is not prohibited from being considered. See *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 312-313; 600 NW2d 664 (1999).

The trial court did not identify the perceived contradictions between Dr. Sandoval's second affidavit and his prior deposition testimony. In his first affidavit, prepared in 2010, Dr. Sandoval averred that it was his opinion that the delay in diagnosis "resulted in expansion of the field of radiation treatment in order to affect the larger area of her cancer." At his deposition in March 2013, Dr. Sandoval stated that an earlier diagnosis "would have positively impacted her prognosis," elaborating that "if this tumor would have been diagnosed earlier, I believe the tumor would have been smaller . . . ." In his second affidavit, he again stated that the delay in diagnosis and treatment subjected Mollie to more extensive radiation treatment. In his deposition, he stated that earlier detection of the cancer affected Mollie's prognosis, but he was not asked about the scope of radiation treatment. The fact that Dr. Sandoval did not address the scope of radiation treatment in his deposition does not mean that his first or second affidavits were inconsistent with his deposition testimony. At his deposition, Dr. Sandoval was asked about the impact an earlier diagnosis would have had on Mollie's prognosis and he explained that it might have allowed for surgical treatment of the pelvic tumor and it might have avoided the overt "clinically measurable" metastatic disease she suffered in her lung. He agreed that Ewing sarcoma in children is treated with systemic chemotherapy and local control, which can be surgery, radiation, or a combination of those two forms of treatment. Dr. Sandoval also stated in

his deposition, with reasonable medical certainty, that the tumor would have been smaller if the condition had been diagnosed sooner. This testimony was not inconsistent with the pertinent statements in his affidavits that earlier diagnosis would have resulted in less expansive radiation treatment. Because Dr. Sandoval's second affidavit did not contradict his prior deposition testimony, the trial court was required to consider it when reviewing defendants' motions for summary disposition. MCR 2.116(G)(5).

We disagree with defendants' suggestion that Dr. Sandoval's opinions lacked factual support. An expert's opinions must be based on facts in evidence. *Skinner*, 445 Mich at 173-174. Dr. Sandoval indicated that it was "more probable than not" that the pelvic tumor increased in size "as a result in the delay in the diagnosis and institution of treatment" of the tumor, which "necessitated a wider area of radiation therapy . . . which would cause the patient increased pain and discomfort as a result of receiving that treatment." The dates of defendants' alleged conduct and the eventual discovery of the tumor and onset of treatment were matters in evidence, and Dr. Sandoval was qualified, based on his medical experience and training, to render an opinion regarding whether the tumor would have likely grown between the time of defendants' alleged conduct (July, August, and September of 2008) and the eventual discovery of the tumor. Dr. Sandoval offered a medical basis for his opinion, and it was for the jury to determine what weight his opinion carried.[2] See *Wolford v Duncan*, 279 Mich App 631, 638-639; 760 NW2d 253 (2008).

We also disagree with Dr. Sankaran's assertion that Dr. Sandoval's opinion testimony was contradicted by the testimony of plaintiff's other expert, Dr. Hughes. Although Dr. Hughes testified that Ewing sarcoma requires systemic treatment, and that chemotherapy is presently the only form of systemic treatment, Dr. Hughes was not questioned regarding the scope of radiation treatment. His testimony did not conflict with Dr. Sandoval's testimony and affidavits.

In sum, because Dr. Sandoval's affidavits were properly before the court and established a question of fact regarding whether the delay in diagnosis and treatment caused Mollie to endure increased pain and suffering, the trial court erred in granting defendants' motion for summary disposition. Accordingly, we reverse that decision.

In their cross-appeal, defendants Dr. Taha, Regional Medical Imaging, P.C., and Dr. Rudraraju argue that they were entitled to summary disposition on the alternative ground that plaintiff's only radiology expert, Dr. Shulak, did not meet the requirements to offer expert testimony under MCL 600.2169(1), because his deposition testimony indicated that he did not spend the majority of his professional time practicing diagnostic radiology in 2007 and 2008. These defendants challenge the trial court's decision denying their motion to strike Dr. Shulak as an expert witness. We review a trial court's decision regarding an expert witness's qualifications

---

[2] There was no timely, developed challenge to Dr. Sandoval's opinions regarding radiation treatment on the ground that they did not comply with MRE 702 because they were not based on reliable principles and methods. Because this issue was not properly raised and addressed below, we do not consider it. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005).

for an abuse of discretion; an abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

MCL 600.2169(1) provides, in relevant part:

In an action alleging medical malpractice, a person *shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria*:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), *during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following*:

(*i*) *The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.*

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty. [Emphasis added.]

As used in the statute, a "majority" of time means that the witness must have spent more than 50 percent of the witness's time practicing the relevant specialty during the year preceding the alleged malpractice. *Keifer v Markley*, 283 Mich App 555, 559; 769 NW2d 271 (2009).

It is undisputed that Drs. Tata and Rudraraju were board-certified diagnostic radiologists in 2008, when the alleged malpractice occurred. Dr. Shulak testified at his deposition in 2012 that he is a board-certified radiologist who also focuses his practice in the subspecialty of interventional radiology. Most of his deposition testimony focused on his practice at the time of his deposition, in 2012. He stated that he spent about one-third of his time in the area of general diagnostic radiology. When asked how his current practice compared to his practice in 2007 and 2008, he stated that he was "doing slightly more intervention now than I was in 2007."

After the pertinent defendants filed their motion to strike Dr. Shulak as an expert witness, plaintiff submitted a supplement affidavit from Dr. Shulak that clarified his deposition testimony regarding his involvement in interventional radiology and provided factual data regarding his

actual involvement in diagnostic radiology matters in 2007 and 2008, based on a review of his records for those years. In pertinent part, Dr. Shulak averred that (1) there is an overlap between diagnostic radiology and interventional radiology; (2) he reviewed his records from 2007 and 2008 and determined that he reviewed for diagnostic purposes 13,470 cases in 2007 and 14,303 cases in 2008, the "substantial majority" of which involved diagnostic radiology matters; (3) the term "interventional radiology" as used in his deposition related to "the type of cases that would be performed by a diagnostic radiologist;" and (4) "in the years 2007 and 2008 the majority of my professional time as a radiologist was spent interpreting films and studies in the field of diagnostic radiology." The trial court determined that Dr. Shulak's affidavit was sufficient to show that Dr. Shulak devoted a majority of his professional time to the active clinical practice of diagnostic radiology during the year preceding the alleged malpractice. Accordingly, it denied the motion to strike Dr. Shulak as an expert witness.

We disagree with the argument that the trial court should not have considered Dr. Shulak's affidavit because it contradicted his prior deposition testimony. As previously indicated, a witness is bound by his or her deposition testimony, which cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition. *Bailey*, 293 Mich App at 626. However, an affidavit that clarifies or expands upon previous testimony is not improper. *Wallad*, 236 Mich App at 312-313. Dr. Shulak's affidavit sought to clarify, it did not directly contradict, his prior deposition testimony. Dr. Shulak stated in his deposition that he was doing more intervention in 2012 than in 2007; the affidavit provided factual data regarding his actual involvement in diagnostic radiology matters in 2007 and 2008, based on a review of his records for those years; and Dr. Shulak further explained how the work discussed at his deposition was actually related to diagnostic radiology. Dr. Shulak's deposition testimony and affidavit are not contradictory simply because Dr. Shulak later provided specific factual data and more information regarding his work from 2007 to 2008. See *Yoost v Caspari*, 295 Mich App 209, 225 n 3; 813 NW2d 783 (2012). Dr. Shulak did not make statements of fact at his deposition regarding the percentage of his work in 2007 and 2008 involving diagnostic radiology that were later contradicted by his affidavit. See *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480-481; 633 NW2d 440 (2001). Thus, the trial court did not err in considering Dr. Shulak's supplemental affidavit.

Further, the affidavit establishes that Dr. Shulak met the requirements of 600.2169(1) because he spent a majority of his professional time practicing in the area of diagnostic radiology during the year preceding the alleged malpractice. Dr. Shulak clarified how diagnostic radiology and interventional radiology overlap, he provided detailed information regarding the number of diagnostic radiology matters he reviewed in 2007 and 2008, he explained how the image-guided procedures discussed in his deposition were part of his expertise in diagnostic radiology, and he averred that he spent the majority of his professional time in 2007 and 2008 "interpreting films and studies in the field of diagnostic radiology." Accordingly, the trial court did not abuse its discretion in denying the motion to strike Dr. Shulak as an expert witness and did not err in denying the related motion for summary disposition based on this same argument.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Mark J. Cavanagh
/s/ Kurtis T. Wilder