# STATE OF MICHIGAN

# COURT OF APPEALS

DENISE GOEDKER,

       Plaintiff-Appellee,

v

JON L. SCHRAM, M.D.,

       Defendant-Appellant,

and

FOREST HEALTH MEDICAL CENTER, LLC,

       Defendant-Appellee,

and

DR. ELAINA VAYNTRUB and BARIATRIC
INTERNISTS OF MICHIGAN, P.C.,

       Defendants.

UNPUBLISHED
May 10, 2016

No. 324074
Washtenaw Circuit Court
LC No. 13-000195-NH

---

DENISE GOEDKER,

       Plaintiff-Appellee,

v

FOREST HEALTH MEDICAL CENTER, LLC,

       Defendant-Appellant,

and

JON L. SCHRAM, M.D.,

       Defendant-Appellee,

No. 324587
Washtenaw Circuit Court
LC No. 13-000195-NH

-1-

and

DR. ELAINA VAYNTRUB and BARIATRIC
INTERNISTS OF MICHIGAN, P.C.,

        Defendants.

_____

DENISE GOEDKER,

        Plaintiff-Appellee,

v                                           No. 324822
                                              Washtenaw Circuit Court

DR. ELAINA VAYNTRUB,                        LC No. 13-000195-NH

        Defendant-Appellant,

and

JON L. SCHRAM, M.D., FOREST HEALTH
MEDICAL CENTER, LLC, ADDISON
COMMUNITY PHYSICIAN SERVICE
ASSOCIATION, d/b/a BARIATRIC
SPECIALISTS OF MICHIGAN, and BARIATRIC
INTERNISTS OF MICHIGAN, P.C.,

        Defendants.

_____

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendants Dr. Jon L. Schram, Dr. Elaina Vayntrub, and Forest Health Medical Center, LLC, (collectively, the medical professionals) appeal as on leave granted[1] the trial court's denial of their motions for summary disposition under MCR 2.116(C)(10) in this medical malpractice action. Plaintiff, Denise Goedker, alleged that the medical professionals failed to timely diagnose a bowel obstruction that Goedker developed after a surgery, and that this failure led to an increased risk of bowel perforation during a later surgery to remove the obstruction. Because

_____

[1] *Goedker v Schram*, 498 Mich 882 (2015).

-2-

the only factual support for causation was contained in an affidavit contrary to deposition testimony, we reverse and remand for entry of summary disposition.

## I. FACTUAL BACKGROUND

Dr. Schram performed a successful laparoscopic gastric bypass surgery for Goedker on September 27, 2010, and Dr. Vayntrub provided postoperative observation and treatment. Goedker does not allege that Dr. Schram's performance of the surgery was negligent. However, Goedker developed complications from the surgery. Goedker's nursing notes indicated that on September 28, 2010, Goedker had hypoactive bowel sounds, abdominal pain, nausea, and an inability to pass gas, and complained of these conditions throughout the day. Dr. Vayntrub testified that the results of an abdominal x-ray and upper GI study on Goedker were negative for obstruction and, when Dr. Vayntrub visited Goedker that day, she was doing well and denied having nausea. Goedker began complaining of nausea again at around midnight.

On September 29, 2010, Dr. Schram examined Goedker and diagnosed her with a post-operative ileus, a common post-operative disruption of the intestinal tract. Dr. Schram prescribed Goedker a medication to treat the condition and instructed nurses to discharge Goedker from the hospital if her situation resolved. As of 10:23 p.m., Goedker's nursing notes reflected that she was "voiding and passing flatus" and that her vital signs were stable. Goedker was discharged from the hospital.

On September 30, 2010, Goedker again experienced nausea and abdominal pain. Goedker arrived at the hospital at around 7:40 p.m. and a CT scan revealed a complete bowel obstruction. During an emergency laparoscopic surgery, Goedker's bowel was perforated and she developed sepsis, which in turn caused more complications and an extended hospital stay.

Goedker filed this suit, alleging in pertinent part that the medical professionals' failure to timely diagnose her with a bowel obstruction led to an increased chance of bowel perforation during her emergency surgery. Goedker did not allege that either the bypass or emergency laparoscopic surgeries were negligently performed, or that her bowel obstruction or the emergency surgery could have been avoided. After extensive discovery, the medical professionals moved for summary disposition under MCR 2.116(C)(10), alleging in pertinent part that Goedker failed to provide evidence that the medical professionals' actions proximately caused her injury. Relying on an affidavit of Dr. John W. Baker, which Goedker filed after Dr. Baker's deposition, the trial court denied the medical professionals' motions for summary disposition.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Maiden*, 461 Mich at 120. A genuine issue of material fact exists if, when viewing

the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

To survive a motion for summary disposition, once the nonmoving party has identified issues in which there are no disputed issues of material fact, the burden is on the plaintiff to show that disputed issues exist. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The nonmoving party "must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. A party may not create an issue of fact by contradicting his or her deposition testimony with contradictory statements in an affidavit. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480-481; 633 NW2d 440 (2001).

## III. ANALYSIS

Goedker's claims against the medical professionals all rest on whether a delayed diagnosis led to an increased chance of her injury. In each of their individual appeals, the medical professionals contend that the trial court erred in relying on Dr. Baker's affidavit to establish proximate cause because that affidavit was directly contradictory to Dr. Baker's testimony at deposition. We agree.

MCL 600.2912a(2) requires a plaintiff in a medical malpractice action to prove proximate cause:

> In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of . . . an opportunity to achieve a better result unless the opportunity was greater than 50%.

It is undisputed that Goedker's bowel obstruction would have required surgical treatment regardless of when it was diagnosed and that bowel perforation is a common complication of bowel obstruction surgery. Goedker's theory of the case is that had the medical professionals performed a radiological scan on September 29, 2010, instead of on September 30, 2010, her bowel obstruction would have been discovered sooner and its earlier discovery would have reduced her chances of suffering a bowel perforation. In other words, Goedker contends that the delayed diagnosis made a positive outcome for her surgery less likely.

Two of Goedker's experts did not offer opinions supporting this theory. Dr. David Winston testified that, "I think she should have been kept in the hospital and perhaps a better outcome would have occurred." And Dr. Kenneth Krause testified that, "You know, it's always difficult to say what would have happened if you were there a day earlier or two days earlier," but "you would like to identify these and treat . . . earlier rather than later[.]" Neither expert opinioned whether a delayed diagnosis made Goedker's injury more likely, and certainly neither opined regarding her opportunity to receive a better result.

In determining that a genuine issue of material fact existed regarding causation, the trial court relied on the affidavit of Dr. Baker, provided after his deposition, in which Dr. Baker stated that the medical professionals should have diagnosed a bowel obstruction on September 29,

2010, and that, as a result, Goedker suffered an increased risk of a bowel perforation. Dr. Baker's affidavit provided:

> b. That the bowel obstruction would have been diagnosed if radiology testing was performed prior [to] Mrs. Goedker being discharged home from the Forest Health Medical Center on September 29, 2010.

> c. That discharging Mrs. Goedker home from Forest Health Medical Center on September 29, 2010 without diagnosing her bowel obstruction created a lengthy delay in the diagnosis of her bowel obstruction and as a result she was not taken into the operating room until October 1, 2010.

> d. That the repair surgery for a bowel obstruction becomes more difficult to perform and the risk of complications, including a perforation, substantially increases the longer a bowel obstruction goes undiagnosed and untreated.

> e. That the delay in timely diagnosis of Mrs. Goedker's bowel obstruction caused her bowel to become significantly dilated over time and greatly increased the risk of complications to surgically treat her condition, which included the risk of perforation of the bowel during surgery.

> f. That had the bowel obstruction been timely diagnosed during Mrs. Goedker's post-operative admission at Forest Health Medical Center, the risk of perforation during the repair surgery would have been extremely low and more likely than not could have been avoided and would not have occurred.

> e. That had earlier surgery been performed at Forest Health Medical Center prior to Mrs. Goedker's discharge home, it is more probable than not that the Plaintiff would not have suffered the serious damages and harm caused by the perforation that occurred during the emergency surgery . . . .

However, at his deposition, Dr. Baker did not testify with such certainty. Dr. Baker testified that the medical professionals should have performed a radiological study if Goedker's condition was not improving:

> *Q*. Do you have an opinion as to when the obstruction should have been diagnosed?

> *A*. Yes.

> *Q*. What is your opinion?

> *A*. I think that they should have evaluated her when she did not continue the usual course that you're used to seeing with their patients that they're going home the first or second day, that they're tolerating liquid, that they're passing flatus, they've stopped belching, they're not nauseated, and that they meet their general criterial for discharge. When you evaluate, you see a general course, and when somebody is falling outside of that course, then you start to address other

issues. You would then consider if they're not getting better, do you do plain film, do you do a CAT Scan, do you try to evaluate them for it.

Dr. Baker testified that records indicated that Goedker was getting better throughout the day on September 29, 2010:

> *Q*. You are aware that over the course of that day, on the 29th, Mrs. Goedker represented that her pain was improving, correct?
>
> *A*. Yes, sir.
>
> *Q*. You are aware that she represented that her ability to pass flatus returned, correct?
>
> *A*. Yes, sir.
>
> *Q*. Those subjective representations from a plaintiff are inconsistent with the manifestation of an obstruction, true?
>
> *A*. Yes, sir.

And Dr. Baker testified that the medical professionals should not necessarily have suspected a bowel obstruction on September 29, 2010:

> *Q*. When Dr. Schram saw Mrs. Goedker on the 29th, should he have suspected an obstruction?
>
> *A*. Not necessarily.
>
> *Q*. Up until that point you would agree that it was reasonable and appropriate for Dr. Schram to suspect and to formulate a treatment plan for an ileus, correct?
>
> *A*. Yes, sir.
>
> *Q*. And that's what he did by initiating the administration of [medication], correct?
>
> *A*. Yes, sir.
>
> *Q*. After the administration of the [medication] as we've already discussed, Mrs. Goedker's abdominal pain improved, and, her ability to pass flatus returned, correct?
>
> *A*. Yes, sir.
>
> *Q*. Was Dr. Schram required to order the CT scan or an X-ray or some other radiograph on September 29th?

*A.* Mrs. Goedker continued to have some abdominal distension and nausea throughout the course of the day. I think that would have warranted at least a plain film abdominal series looking at the patients' abdominal both in flat and erected position to see if she had continued ileus or she was developing signs of an obstruction.

*Q.* Do you have an opinion as to what plain film would have shown if it had been ordered? Let's say at noon on September 29th?

*A.* It would have shown probably dilated small bowel and colon.[2]

We conclude that Dr. Baker's affidavit is contrary to his deposition testimony regarding causation. Dr. Baker stated in his affidavit that Goedker certainly had a bowel obstruction on September 29, 2010, and that a radiological scan would have discovered it, and that therefore the failure to diagnose it directly led to an increased risk of bowel perforation. However, at his deposition Dr. Baker testified that a radiological scan on the 29th would have shown a dilated bowel—which is consistent with an ileus. Dr. Baker also testified at his deposition that radiological testing should have been ordered if Goedker's condition did not improve, and then acknowledged that Goedker's condition improved throughout the day on September 29, 2010. Dr. Baker did not testify at his deposition that failure to conduct a radiological scan on September 29, 2010, led to a significantly increased risk of perforating Goedker's bowel during her later surgery. However, that is what his affidavit provides. We conclude that Dr. Baker's affidavit contradicted his deposition testimony, and that the trial court should not have considered Dr. Baker's contradictory affidavit when ruling on the motion.

Because Dr. Baker's contrary affidavit was the only support for the proposition that a radiological scan on September 29, 2010, would have led to a more positive outcome, we conclude that the trial court should have granted summary disposition. Accordingly, we direct the trial court to grant summary disposition in favor of the medical professionals. Given our resolution of this issue, we need not reach the medical professionals' remaining issues.[3]

---

[2] Dr. Baker previously testified that a dilated small bowel and colon was consistent with an ileus:

*A.* There was some small bowel and colon seen on [the GI study on the 28th].

*Q.* Which would be consistent with the presence of an ileus?

*A.* Yes, sir.

[3] However, we note that given Dr. Baker's failure to address medical probabilities in his affidavit, even if the trial court properly considered that affidavit, it was deficient for the purposes of MCL 600.2912a(2). See *Pennington v Longabaugh*, 271 Mich App 101, 104-105; 719 NW2d 616 (2006).

We reverse and remand.  We do not retain jurisdiction.  The medical professionals may tax costs.  MCR 7.219(A).

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray