# STATE OF MICHIGAN

# COURT OF APPEALS

JACKSON THOMAS, a Minor, by HOWARD T.
LINDEN, Conservator,

UNPUBLISHED
September 27, 2016

Plaintiff-Appellant,

v

No. 326072
Wayne Circuit Court
LC No. 11-006027-NH

OAKWOOD HEALTHCARE, INC. doing
business as OAKWOOD SOUTHSHORE
MEDICAL CENTER,

Defendant-Appellee,

and

MARGARET JASKOWSKI-LUTSIC, D.O., and
MARGARET A. LUTSIC, D.O., P.C.,

Defendants,

and

ALICE SHANAVER, D.O.,

Intervening Defendant.

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

SAAD, J., (*dissenting*).

As a physician with her own medical practice, Dr. Alice Shanaver wore two hats at Oakwood Hospital. Her dual role at Oakwood is fairly straightforward, as properly explained and outlined by the trial court in its ruling. In her first role, the one the trial court found, and I find, to be applicable here, she, like many doctors, had on-call privileges at the hospital to treat patients, at the request of patients or other physicians. In this role, like most physicians at Oakwood, Dr. Shanaver is an independent contractor who owns her own business, bills the patient, is paid directly by the patient, and is permitted to treat her patient at the hospital pursuant to the standard on-call policy which permits doctors to treat patients at the hospital. In this role, under Michigan law, she is neither an employee nor an agent of the hospital, unless the hospital

-1-

exerts sufficient control over her practice of medicine at the hospital to warrant the imposition of vicarious liability. See *Laster v Henry Ford Health Sys*, ___ Mich App ___; ___ NW2d ___ (Docket No. 324739, issued August 23, 2016), slip op, p 6, citing *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978). Because there is no evidence that the hospital exerted any control or influence over Dr. Shanaver's treatment of plaintiff, there is no basis under Michigan law to find the hospital vicariously liable for Dr. Shanaver's alleged medical malpractice. See *Laster*, ___ Mich App at ___ (slip op at 7). Simply put, as an independent contractor, Dr. Shanaver is legally responsible for her own medical malpractice, if any, not Oakwood Hospital.

The second role Dr. Shanaver performed at the hospital was as a hospital employee and agent, but only when she performed pursuant to her preceptor contract with Oakwood, as a teacher of medical students and residents. Under this preceptor contract, when she taught, Dr. Shanaver was an employee of the hospital. Also, under this contract, if she taught while simultaneously treating patients, then the contract itself provides that the patient is a patient of the hospital, not Dr. Shanaver, and thus the hospital would be directly liable for any medical malpractice by Dr. Shanaver. In her sworn deposition testimony, Dr. Shanaver made it abundantly clear that she did not act under her preceptor contract when she treated plaintiff, but instead simply performed as an independent contractor physician with on-call privileges who treated her patient, at the request of the patient's mother's doctor. And this was the specific holding of the trial court. In her unrebutted sworn testimony, Dr. Shanaver said that she did not see plaintiff under her preceptor contract when she treated plaintiff. Indeed, the record is devoid of any evidence whatsoever that she treated plaintiff pursuant to her preceptor contract. Here, no medical student or resident accompanied Dr. Shanaver or was in attendance when she treated plaintiff. Accordingly, this event could not reasonably be construed or understood to fall within Dr. Shanaver's contractual role as a preceptor. Again, this was the clear and unequivocal holding of the trial court, which is fully supported by the record evidence.

The trial court properly understood the nature of the two roles played by Dr. Shanaver and held, correctly in my view, that Dr. Shanaver simply did not work under her preceptor contract when she treated plaintiff, but instead performed her role as any other independent contractor physician, with full liability for any medical malpractice. The majority correctly acknowledges that "there is no evidence showing that Dr. Shanaver was engaged in precepting, teaching, or delivering curriculum when she performed the procedure on plaintiff." This fact alone dictates that Dr. Shanaver was not performing under her contract. But the majority nonetheless finds a question of fact based on the provision that states that "100% of Physician's time spent *performing Services* shall constitute teaching activities." (Emphasis added.) The majority fails to recognize that it does not follow that all of Dr. Shanaver's time spent at the hospital is in the performance of "Services" as defined under the agreement. In other words, while teaching is a service that *can* be accomplished through consultations,[1] there is no dispute

---

[1] Item 4 of the job description in the agreement provides, in pertinent part, that one of Dr. Shanaver's duties is to "Deliver the Manipulative Medicine curriculum through lectures, discussions, consultations, outpatient visits, organized self-study and pre- and post-tests." Hence, the proper focus should be on whether there was any "Deliver[y] [of] the Manipulative

that no teaching or delivery of curriculum occurred during the consultation at issue.[2]  Dr. Shanaver's assertion in her affidavit that students and residents had an "open invitation" to attend consultations has no effect on whether a delivery of curriculum occurred.  In other words, the contract's plain language only contemplated "delivery" of curriculum to students and residents; thus, for Dr. Shanaver to have performed under that portion of the contract, such an "invitation" would have to have been accepted and acted upon by a resident or student.  Yet, that did not happen here.  Of note, the agreement requires Dr. Shanaver to obtain her own professional liability insurance for activities that fall outside the scope of the agreement.  Such a requirement makes it abundantly clear that it was anticipated that not all of Dr. Shanaver's activities at the hospital would fall within the scope of the agreement.

Furthermore, a reading of Dr. Shanaver's entire deposition makes it clear that she considered herself to be treating plaintiff in her capacity as an independent contractor, who had privileges at the hospital.  She never once mentioned that she was working in any other capacity.  Indeed, Dr. Shanaver's affidavit also does not state that she was acting within the scope of her preceptor agreement when she treated plaintiff.  To the extent that her affidavit could be

---

Medicine curriculum," not whether there was any "consultation."  With no delivery, the analysis need go no further.  The majority finds that the contract is ambiguous because it supposedly could cover instances when there is a consultation without any delivery of any curriculum based on the *potential* that a resident or student *may* appear to receive the curriculum.  But the contract nowhere allows for *potential* delivery; instead, there must be a "delivery," of which the majority recognizes there was none.  The majority's finding of an ambiguity, despite the presence of clear contract terms, is contrary to the law.  *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003); *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999).  Moreover, our Supreme Court has clarified that an ambiguity does not exist merely because its terms are susceptible to differing interpretations.  Instead, the provisions must "*irreconcilably* conflict with each other," *Klapp*, 468 Mich at 467 (emphasis added), or be "*equally* susceptible to more than a single meaning," *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (emphasis added).  See also *In re Application of Ind Mich Power Co for a Certificate of Necessity*, 498 Mich 881 (2015) (rejecting Court of Appeals definition of ambiguity as being "subject to two interpretations").  Here, neither of these facets is present in the contract.

[2] Indeed, as previously noted, "consultations" were only one of the enumerated ways for which Dr. Shanaver could deliver the Manipulative Medicine curriculum under the contract.  The other listed methods include "lectures, discussions, . . . outpatient visits, organized self-study and pre- and post-tests."  If the majority were correct in that the contract could be viewed as covering all consultations because of the possibility that a student may walk in and overhear and observe a consultation that otherwise would have had no curriculum delivery, then seemingly *any discussion* Dr. Shanaver had at the hospital *with anyone* likewise could also be considered performance under the contract because, *regardless of the actual topic of the discussion*, there is the *possibility* that (1) the topic of discussion could turn to curriculum and (2) a student or resident could appear and/or overhear the discussion.  Such an example illustrates how the majority's extreme view contorts a plain contract provision and turns it into something that no longer resembles the contract.

interpreted as making this assertion, it is inconsistent with her earlier deposition testimony that she was acting as in her role as an independent contractor and not as an employee of Oakwood, and therefore it cannot create a question of fact. See *Dykes v William Beaumont Hosp*, 246 Mich App 471, 479-480; 633 NW2d 440 (2001). In any event, although her testimony supports my view and contradicts the majority's, I would note that her subjective view on the legal conclusion of whether she was operating under her contract with Oakwood is largely irrelevant. What is relevant are the facts surrounding the consultation that she described in her testimony. Again, the clear, unrefuted evidence establishes that Dr. Shanaver did not perform any duties under her preceptor agreement with Oakwood because there were no residents or medical students present to receive any curriculum. The majority's ruling that the contract was ambiguous and could be interpreted to include the consultation at issue simply because it had the *potential* to convert into a delivery of curriculum if a student or resident showed up, despite the clear fact that the potential was never realized, is a strained application of the law.

Thus, the majority, in an obvious effort to impose vicarious liability upon the hospital, finds in the preceptor contract words that magically turn a simple on-call treatment into a preceptor situation, and in so doing, uncovers a question of fact to go to the jury. This highly questionable approach by the majority is neither consistent with the facts nor the law, but does get the majority its desired result. Consequently, because the trial court ruled correctly and the majority, sadly, turns a straightforward case of Dr. Shanaver's treatment of a patient into a "teaching moment," I dissent.


/s/ Henry William Saad

-4-