*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSHUA DAVID BRIERLEY,

       Plaintiff-Appellant,

v

TIMOTHY SAVAS and DOROTHY SAVAS,

       Defendants-Appellees.

UNPUBLISHED
June 22, 2023

No. 362016
Wayne Circuit Court
LC No. 21-005139-NO

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

BORRELLO, J. (*dissenting*).

The majority concludes that plaintiff could not establish causation because, at his deposition, he changed his theory of causation "from slipping on the wet grass to losing his balance because of the hole in the ground." Further, the majority concludes that plaintiff did not provide any evidence beyond mere speculation that there was a hole in the ground. However, at his deposition and after discussing the alleged hole and uneven ground, plaintiff testified as follows:

> Q. And what exactly happens as you're pushing the lawn mower?
>
> A. Between the uneven ground and the wet grass I kind of slipped, and my body weight just kind of like shoved me and my foot went underneath the lawn mower.

Hence, while plaintiff unquestionably testified that other factors may have played a role in causing his feet to slip from beneath him, he never abandoned his initial contention that his fall was due, at least in part, to the wet grass. Because I do not share the majority's view of plaintiff's testimony negating his cause of action in this matter, I respectfully dissent.

This Court has previously explained:

Deposition testimony damaging to a party's case will not always result in summary judgment. However, when a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against him in the absence of any explanation or modification, or of a showing of mistake

or improvidence. The purpose of GCR 1963, 117 [now part of MCR 2.116] is to allow the trial judge to determine whether a factual issue exists. This purpose is not well served by allowing parties to create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition. [*Dykes v William Beaumont Hosp*, 246 Mich App 471, 480-481; 633 NW2d 440 (2001) (quotation marks and citations omitted; alteration in original).]

It is evident from plaintiff's deposition that he claimed to have fallen as the result of *both* the slippery, wet grass *and* the nature of the terrain that was uneven and contained a hole. Plaintiff specifically testified in his deposition that he observed that the grass was wet when he arrived to mow the lawn, that the yard was "a hill," and that he told defendant Timothy Savas, "Hey, I don't think it's a good idea [to mow the yard]." Even accepting that plaintiff's testimony regarding the existence of a hole or uneven terrain where he fell was speculative, there remains his testimony about the existence of wet grass and that he slipped on wet grass.

I would conclude that plaintiff's deposition testimony is fairly understood as providing clarification that he believed there was a hole or uneven terrain—in addition to the wet grass—that contributed to his fall. Thus, he is not somehow bound solely to his claim about the hole or uneven ground as an exclusive theory of causation and he cannot be deemed to have somehow waived his theory about the wet grass. *Id*. Yet, this is essentially what the majority concludes. To support its position, the majority selects statements from plaintiff's deposition and engages in what I believe to be impermissible fact finding in order to negate plaintiff's testimony about his fall being caused be the wet grass he observed. See *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 480; 776 NW2d 398 (2009) (stating that a court "may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition"). Viewing the evidence in the light most favorable to the nonmoving party, there exists a question of fact regarding causation.

Additionally, this case implicates our Supreme Court's holding in *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328, 333; 968 NW2d 397 (2021), that "an open and obvious condition can be deemed effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes." The Supreme Court explained:

[T]he overall analysis centers on whether a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness. The premises possessor can expect that the employee will act reasonably. It follows that the employee's circumstances are relevant only to the extent they conform to an objectively reasonable standard. Put differently, the employee's decision to confront the hazard to enter his or her workplace is considered under an objective standard.

This standard's application will depend on the facts of the case, but the key is whether alternatives were available and would have been used by a reasonable person in the employee's circumstances. If an employee could have avoided the condition through the use of due care under the circumstances, then the condition was not effectively unavoidable. For example, an employee might be able to avoid a hazard by taking a different path to work. Another consideration is whether the

employee would need to breach the employer's policies in order to avoid the condition and what the consequences of that breach might be. What a court cannot conclude, however, is that a hazard was avoidable simply because the employee could have elected to skip work or breach other requirements of his or her employment. [*Id.* at 346-347 (citations omitted).]

At plaintiff's deposition in this case, the following exchange occurred:

Q. If you initially thought it was dangerous and wasn't going to be good like you said earlier, why did you stay and cut the grass?

A. He almost forced me to do it.

Q. And how is that?

A. Mr. Savas, I mean, he was so hot – that guy, he's a special individual, I'll tell you that, to say the least, and he just kind of was like, "You have to do it," like, "I have people coming over." There was no – there was no saying no to that guy, no can I come back later, no can I come back tomorrow.

Q. Did he threaten you in any way?

A. Sort of, yes.

Q. How so?

A. "You have to do this otherwise" – almost like, "or else you're not going to be able to cut my yard again."

Q. Did he threaten you personally with anything other than not being able to cut his grass again?

A. No. No. Nothing like that but, like, yeah.

Here, the trial court found that the condition was open and obvious, but it did not address whether there was a question of fact that it was effectively unavoidable under *Estate of Livings*. I would hold that the trial court do so on remand.

For these reasons, I respectfully dissent and would remand the matter to the trial court with instructions to conduct further proceedings consistent with this opinion.

/s/ Stephen L. Borrello