*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. L. EDWARDS, Minor.

UNPUBLISHED
December 21, 2023

No. 366312
Wayne Circuit Court
Family Division
LC No. 2022-001683-NA

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's order terminating her parental rights to her minor child, GLE, under MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse and the court finds likelihood that child may suffer from injury in the foreseeable future if placed in parent's home), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), filed a permanent custody petition requesting that the trial court take jurisdiction over GLE, find a statutory basis for termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*) (parent abused a child or sibling and the abuse included criminal sexual conduct), and (k)(*ix*) (sexual abuse of a child), and conclude that termination of respondent's parental rights was in the best interests of the minor child. The petition first provided that AME, the maternal grandmother of GLE, was appointed the minor child's legal guardian in December 2017, and AME was primarily responsible for the minor child's care. The petition alleged that in April 2022, AME disclosed that GLE complained his "penis was hurting" because respondent "put her mouth on his penis and tried to bite it," and the subsequent medical examinations and forensic interview of the minor child revealed respondent attempted to suffocate GLE with a pillow, respondent "touche[d] his penis

---

[1] While the father was originally designated as a respondent, he is not a party to this appeal, nor any other appeal, despite the termination of his parental rights. Therefore, all references to respondent solely refer to respondent mother.

and his butt with her mouth and tongue," and respondent yelled and assaulted GLE on a daily basis. The petition additionally alleged (1) respondent was previously diagnosed with schizophrenia and bipolar disorder and prescribed medication accordingly, and (2) AME served as respondent's guardian between September 2017 and March 2020, because respondent was legally deemed an incapacitated individual, with an additional case pending in the probate court as respondent was involuntarily hospitalized for mental health treatment on August 9, 2022. Following a preliminary hearing, the trial court authorized the petition, and ordered GLE remain under AME's care because of her guardian status.

In April 2023, the trial court held a combined adjudicatory and evidentiary hearing, and it determined that there were statutory grounds to exercise jurisdiction over GLE, and petitioner presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), and (j). The trial court did not address MCL 712A.19b(k)(*ii*) or (k)(*ix*) during this hearing or in its order terminating respondent's parental rights. The trial court also determined that petitioner established, by a preponderance of the evidence, that termination of respondent's parental rights was in the best interests of GLE. This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred when it determined that the DHHS presented clear and convincing evidence to support termination of her parental rights under MCL 712A.19b(3)(b)(*i*), (g), and (j).

To terminate parental rights, the trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established. *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). This Court reviews a trial court's factual findings and ultimate determinations on the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Notably, the clear and convincing evidence standard is "the most demanding standard applied in civil cases." *In re Pederson*, 331 Mich App at 472 (quotation marks, citation, and brackets omitted).

> Evidence is clear and convincing if it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id*. (quotation marks and citation omitted).]

The trial court "may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial . . . ." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020). The trial court may also consider "any additional relevant and material evidence that is received by the court at the termination hearing." *Id*.

MCL 712A.19b(3)(b)(*i*) provides for termination of parental rights under the following set of circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

The trial court did not clearly err in determining that respondent sexually abused her minor child and there was a reasonable likelihood GLE would suffer from injury or abuse in the foreseeable future if placed in respondent's home.

Throughout the entirety of the child protective proceedings, details about the underlying sexual abuse allegations have remained consistent and documented by numerous sources. The permanent custody petition provided GLE first disclosed to AME that his "penis was hurting" because respondent "put her mouth on his penis and tried to bite it." This led to two distinct medical evaluations at a children's hospital, during which GLE informed the attending physicians and the present social worker that respondent attempted to suffocate him with a pillow, respondent "touche[d] his penis and his butt with her mouth and tongue" and "he does not like it," and respondent yelled at and assaulted GLE on a daily basis. The petition further detailed GLE participated in a forensic interview, during which GLE expressed that when he was six years old, respondent "came into his room and touched his 'private part' (pointing to his penis) with her mouth and licked his 'butt' while lying in his bed," as respondent instructed him to remain silent. Autumn Lewis, a Child Protective Services (CPS) investigator, confirmed these details during the preliminary hearing.

Respondent argues the minor child's forensic interview revealed AME informed GLE that he was physically and sexually abused by respondent, indicating his statements were "coached." During a tender-years hearing[2] held by the trial court, Eboni Mathis, the forensic interviewer, testified that she conducted a forensic interview of then six-year-old GLE in July 2022, and the interview occurred in a closed room with only herself and GLE present, as a camera recorded the session. Mathis discussed the forensic interview procedure with GLE, which included GLE distinguishing between a truth and a lie, and GLE informing Mathis if she expressed a fact incorrectly or said something incomprehensible. The protocol was instituted to ensure the reliability of the interview. Mathis detailed that GLE shared he lived with AME, as opposed to respondent, because respondent abused him. When Mathis asked GLE to explain the sexual abuse, the minor child replied respondent was "doing something that's not for kids," and GLE recognized it was sexual abuse after disclosing what transpired to AME. During the interview, Mathis proceeded to explain the difference between a "good touch" and a "bad touch." GLE identified respondent's conduct as a "bad touch," and shared that respondent sucked his "privates," indicating the area by pointing to his groin. GLE further reported respondent licked his anus and pointed to the body part. Mathis further testified during the tender-years hearing that GLE expressed that

---

[2] The trial court conducted a tender-years hearing under MCR 3.972(C)(2)(a), which addresses the admissibility of hearsay statements made by a child under 10 years of age regarding an act of sexual abuse.

respondent instructed GLE to remain silent, and the sexual abuse occurred "all night." Mathis stated that GLE provided that respondent physically abused him when he was four or five years old in AME's residence, and the sexual abuse transpired when GLE was six years old. Mathis expressed she believed GLE understood the type of conduct which constituted sexual abuse, and that the minor child was the victim of said acts.

While GLE attributed learning the term "sexual abuse" from AME during the forensic interview, the minor child independently detailed respondent's conduct by identifying which body parts respondent used to touch him, and GLE further pointed to the areas where he was violated— all of which was consistent with the permanent custody petition allegations and the children's hospital records.[3] The underlying sexual abuse allegations were also under investigation by the Detroit Police Department. Moreover, AME testified that she did not inform GLE that he was sexually abused; rather, she was shocked at the allegation, and GLE disclosed similar conduct to his paternal grandmother, who transported GLE to the children's hospital for further evaluation. Lewis also detailed respondent's inappropriate reaction to the sexual abuse claims, and she did not believe respondent understood the gravity of the minor child's contentions as respondent "was kind of laughable. Like it's kind of laughing or joking is almost a kid like type behavior that was kind of displayed from mother. So like I said, I don't believe that she took the—the seriousness of this very serious." Lewis further testified that respondent continually denied the sexual abuse allegations, and respondent placed the blame on AME for "putting these thoughts in [GLE's] head;" however, at the time of the alleged sexual abuse, respondent possessed access to GLE because respondent was residing in AME's home until the filing of the CPS complaint in April 2022.

Based on its review of the evidentiary record, the court determined there was a reasonable likelihood that GLE would suffer from further injury or abuse if placed with respondent because of the sexual abuse allegations. See *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009) ("It is not for this Court to displace the trial court's credibility determination."). The trial court concluded the forensic interview testimony was valid and further opined:

> The court finds credible—once again [respondent's counsel] did an excellent argument, trying to argue that the—the idea of sexual abuse was planted in the child's mind, but the Court finds looking at the records that that's really not the case, that it was it were [sic] pointed independently and then after the fact that appears her grandmother articulated as to exactly the nature of what that was. The court also notes that there is evidence presented—credible evidence of physical

---

[3] See cf. *In re Curry*, 505 Mich 989, 989 (2020) (concluding that the trial court's factual findings regarding whether the respondent sexually abused one of the children "based on a 3-year-old child's response to two open-ended questions and one leading question asked by her aunt, and a 6-year-old child's statement that respondent threatened a 'whooping' " for discussing the sexual abuse allegations failed to meet the clear and convincing evidence standard). "An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001).

abuse also to the child; that would also serve as a basis to do that physical and— and sexual abuse . . . .

It is apparent respondent was willing to breach legal and moral boundaries between a child and a parent by sexually abusing her son, and that respondent lacked the parenting skills necessary to safely parent any child or recognize the gravity of the abuse allegations against her. See *In re Mota*, 334 Mich App at 322-323 ("Although there was only evidence of one act of sexual abuse, it was an especially egregious violation of a child who had looked to respondent for care and protection as a father figure. We cannot conclude that the trial court clearly erred by finding that this single act of sexual abuse that resulted in physical injuries revealed a side of respondent that posed a serious danger to his minor children."). Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*).

"If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights." *In re Sanborn*, 337 Mich App 252, 273; 976 NW2d 44 (2021). As such, we need not address the additional statutory grounds.

### III.  BEST INTERESTS

Respondent argues that the trial court clearly erred when it determined that termination of respondent's parental rights was in the best interests of GLE under MCL 712A.19b(5). We disagree.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022) (quotation marks and citation omitted).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

The trial court did not clearly err when it determined that termination of respondent's parental rights was in the best interests of GLE. Petitioner presented detailed testimony regarding the physical and sexual abuse allegations advanced against respondent in addition to respondent's severe mental health issues and respondent's history of aggressive behavior. The evidentiary record demonstrates that it is highly unlikely GLE could be returned to the care of respondent within the foreseeable future, if at all, particularly in light of the fact that AME has served as the minor child's legal guardian since 2017. Lewis additionally testified it was in GLE's best interests to terminate respondent's parental rights and stated, "[GLE] has been residing with—pretty much [AME] his whole life. Now the guardianship has been documented since 2017 where it's been legal, but [GLE] has—that is who he considers mother." Lewis reiterated AME was the only mother figure in the minor child's life, GLE thrived under her care and custody, AME ensured GLE was participating in necessary therapy and counseling, and AME barred contact between respondent and the minor child. Lewis also expressed the adoption of the minor child by AME, as opposed to a guardianship, was the superior permanency plan because AME was GLE's primary caregiver since his birth because of respondent's mental health ailments, and the minor child remained at risk of serious harm if respondent maintained her parental rights because of the nature of the underlying abuse allegations.

As the trial court noted in its order, a child's placement with a relative is a relevant factor in termination decisions. However, this factor is not dipositive given that a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *Id*. AME expressed she was GLE's primary caregiver since his birth and she could "probably count on one hand [the] times that he's actually addressed [respondent] as mom. He calls her by her first name." AME was willing to adopt GLE and she believed she was capable of providing GLE with stability and permanency. Continued reunification efforts, at this point in time, are outweighed by the minor child's dire need for stability, permanency, and finality. Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of GLE.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola